**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

TD BANK, N.A.,                           )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          1:16cv823
                                         )
JAY JALA BAPA, L.L.C., et al.,           )
                                         )
                    Defendants.          )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion for Summary Judgment" (Docket Entry 16) (the "Summary Judgment Motion") and "Plaintiff's Motion to Strike Affidavit of Bankim Rana" (Docket Entry 22) (the "Motion to Strike") filed by TD Bank, N.A. (the "Plaintiff"). For the reasons that follow, the Court will grant in part and deny in part the Summary Judgment Motion and will deny the Motion to Strike.[1]

## FACTUAL AND PROCEDURAL HISTORY

On December 12, 2008, Jay Jala Bapa L.L.C. (the "LLC Defendant") entered into a "Loan and Security Agreement" with Plaintiff regarding a $950,000 loan. (Docket Entry 1-2 at 1.) In connection with the loan, LLC Defendant executed a "U.S. Small Business Administration Note" (Docket Entry 1-3) (the "Note") and

---

1  Pursuant to the parties' consent, Chief United States District Judge Thomas D. Schroeder referred this matter to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 13 at 3; Docket Entry 14 at 1.)  [Docket Entry page citations utilize the CM/ECF footer's pagination.]

a "Deed of Trust, Security Agreement and Assignment of Leases and Rents" (Docket Entry 17-1) in favor of Plaintiff for 220 South Eastern Boulevard, Fayetteville, North Carolina 28301 (the "Motel Property").  In addition, Bankim Rana, Shila Bankim Rana, and Doli Rana (each, a "Guarantor") each executed a "U.S. Small Business Administration Unconditional Guarantee" (each, a "Guarantee"), "unconditionally guarantee[ing] payment to [Plaintiff] of all amounts owing under the Note."  (Docket Entry 1-4 at 1, 7, 13.)[2] LLC Defendant ceased making payments on the Note after September 2015.  (Docket Entry 1, ¶ 22; Docket Entry 10, ¶ 22; Docket Entry 17, ¶ 18.)

On February 12, 2016, Plaintiff sent letters to LLC Defendant and Guarantors (collectively, the "Defendants") notifying them that the Note "is seriously delinquent," and "has been accelerated, and payment in full is hereby demanded" (Docket Entry 17-2 (the "Demand Letters") at 1, 3).  The Demand Letters further informed Defendants that, "unless the outstanding balance on [the] Note is paid within five (5) days," Plaintiff would enforce the "provisions relative to payment of attorneys' fees" in the Note and Guarantees.  (Id. at 1, 3.)  More specifically, the Demand Letters stated that, pursuant to North Carolina General Statute Section 6-21.2, Plaintiff would seek attorney's fees equal to "15%[] of the outstanding balance on the

---

2   In May 2009, Defendants executed an "Amendment to Note," which modified the interest rate on the loan.  (See Docket Entry 1-5.)

Note when the action for collection is started" if the Note remained unpaid. (Id. at 1, 3.) Defendants made no payments on the Note in response to the Demand Letters. (See Docket Entry 10, ¶ 26.) On March 8, 2016, Plaintiff commenced foreclosure proceedings regarding the Motel Property. (See Docket Entry 17, ¶¶ 21-23; see also Docket Entry 17-3.) At a foreclosure sale on April 28, 2016, Plaintiff purchased the Motel Property for $215,000. (See Docket Entry 1, ¶¶ 33-34; Docket Entry 1-6 at 1; Docket Entry 17, ¶¶ 24-25.) Following expiration of the upset bid period, this sale became final on May 9, 2016. (Docket Entry 17, ¶ 25; see also Docket Entry 1, ¶ 39.) Plaintiff also purchased the business assets contained in the Motel Property for $3,824. (Docket Entry 1, ¶ 37; Docket Entry 17-9 at 1.)

On June 29, 2016, Plaintiff initiated this action by filing a "Verified Complaint." (Docket Entry 1 (the "Complaint") at 1.) The Complaint asserts that Defendants owed a deficiency balance of $595,447.97 as of June 13, 2016, with interest accruing at 4.5% per year or "$74.43 per day." (Id., ¶ 41.) The Complaint seeks such deficiency balance "plus reasonable attorneys' fees for 15% of the outstanding indebtedness owing when suit is instituted." (Id. at 6.)[3] In response to the Complaint, Defendants raised a

_____

3 To avoid confusion, citations to the Complaint's relief prayer refer to a page number rather than paragraph, as the Complaint's relief prayer suspends the sequential numbering used in prior sections and begins a new numbering sequence.

defense under North Carolina's anti-deficiency statute, N.C. Gen. Stat. § 45-21.36, contending "that the fair market value of the [Motel P]roperty was equal to the amount of the indebtedness at the time and place of sale, or in the alternative, that the amount of [Plaintiff's] credit bid was substantially less than the fair market value of the [Motel P]roperty." (Docket Entry 10 (the "Answer"), ¶ 44.)

Thereafter, Plaintiff moved for summary judgment. (See Docket Entry 16.) In its Summary Judgment Motion, Plaintiff requests "$510,345.24 plus interest at the annual rate of 4.50% after May 30, 2017, which equates to $60.86 per day," as well as "reasonable attorneys' fees of $73,493.57, which is 15% of the outstanding indebtedness when [Plaintiff] instituted this action on June 29, 2016 ($489,957.14)." (Id. at 1.)[4] Defendants oppose the Summary Judgment Motion. (See Docket Entries 20, 21.) In turn, Plaintiff seeks to strike the affidavit (Docket Entry 21) (the "Rana Affidavit") upon which Defendants rely in opposing summary judgment. (See Docket Entries 22, 23, 25.) Defendants similarly oppose the Strike Motion. (See Docket Entry 24.)

---

4 Plaintiff filed the Summary Judgment Motion on June 2, 2017. (See id. at 2-3.)

**DISCUSSION**

## I.  Preliminary Matters

Federal courts bear an "independent obligation" to assess whether subject-matter jurisdiction exists in every action. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). No presumption of jurisdiction applies, Pinkley, Inc. v. City of Frederick, Md., 191 F.3d 394, 399 (4th Cir. 1999); instead, federal courts must determine if a valid jurisdictional basis exists and "dismiss the action if no such ground appears," In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998).  Generally, federal courts possess jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (i.e., federal question jurisdiction), as well as actions involving disputes of a value of $75,000 or more between "citizens of different States," 28 U.S.C. § 1332(a)(1) (i.e., diversity jurisdiction).  Facts supporting jurisdiction typically must appear in the complaint, see Pinkley, 191 F.3d at 399, and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted).

In this case, the Complaint fails to specify the jurisdictional basis upon which it rests. (<u>See</u> Docket Entry 1, ¶ 6 (stating only that "[t]his Court has jurisdiction over the parties to this action and the subject matter of the claims set forth").) However, the parties treat this action as arising under the Court's diversity jurisdiction, and no discernable basis for federal question jurisdiction appears in the record. (<u>See generally</u> Docket Entries 1, 10, 19, 20, 23-25 (relying on state substantive law).) The Court therefore examines the availability of diversity jurisdiction, remaining mindful that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff," <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 373 (1978) (emphasis in original).

According to the Complaint, Plaintiff "is a national banking association organized and existing under the laws of the United States" and "is co-headquartered in Maine and New Jersey and conducts business in North Carolina." (Docket Entry 1, ¶ 1.) The Complaint further describes LLC Defendant as "organized and existing under the laws of the State of North Carolina with a principal place of business in Cumberland County, North Carolina." (<u>Id.</u>, ¶ 2.) Finally, the Complaint maintains that each Guarantor "is a resident of Lodi, New Jersey." (<u>Id.</u>, ¶¶ 3-5.)[5] Because the

---

5    The Answer concedes the accuracy of the jurisdictional allegations regarding Defendants. (<u>See</u> Docket Entry 10, ¶¶ 2-5.)

Complaint provided insufficient information for "assessing the citizenship of Plaintiff and [LLC] Defendant" (Docket Entry 26 at 1), the Court ordered the parties to file notices supplying certain citizenship information (see id. at 1-2).  According to these notices, Plaintiff's "main office, as designated in its articles of association, is located in the State of Delaware" (Docket Entry 27 at 1) and LLC Defendant "is a North Carolina limited liability company," whose members — the Guarantors — all qualify as residents and citizens of New Jersey (Docket Entry 28 at 1-2).

For diversity jurisdiction purposes, the Court attributes to a limited liability company "the citizenship of all of its members."  Central W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).  Thus, notwithstanding its establishment under North Carolina law, LLC Defendant remains a citizen of New Jersey.  As to Plaintiff, "national banking associations shall," for cases of this sort, "be deemed citizens of the States in which they are respectively located."  28 U.S.C. § 1348.  According to the United States Supreme Court, one "'locates'" a bank for Section 1348 purposes "in the State designated in its articles of association as its main office." Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006).[6]  That view

_____

    6  In so holding, the Supreme Court distinguished the statute governing corporate citizenship, 28 U.S.C. § 1332(c)(1), explaining that "Congress has prescribed that a corporation 'shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business.'"  Id.

establishes Plaintiff as a citizen of Delaware. (See Docket Entry 27 at 1.) The parties therefore qualify as diverse, bringing this case within the Court's diversity jurisdiction.[7]

## II. Relevant Motion Standards

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

_____

at 317 n.9 (quoting 28 U.S.C. § 1332(c)(1)) (emphasis in original). Unlike that statute, the Supreme Court noted, Section 1348 "does not refer to 'principal place of business'" of the entity. Id. The Supreme Court posited that such omission "may be of scant practical significance for, in almost every case, as in th[e] one [before the Supreme Court], the location of a national bank's main office and of its principal place of business coincide." Id. In this case, though, Plaintiff's principal place of business and designated main office diverge. (See Docket Entry 27 at 1 (indicating that Plaintiff's "principal place of business is located in the State of New Jersey" rather than Delaware).) Moreover, if relevant to the citizenship determination, Plaintiff's principal place of business would render the parties non-diverse. However, in light of the Supreme Court's Wachovia Bank decision and in accordance with subsequent appellate decisions addressing this issue, the Court concludes that a national banking association qualifies as a citizen only of the state designated in its articles of incorporation as its main office. See, e.g., OneWest Bank, N.A. v. Melina, 827 F.3d 214, 218-19 (2d Cir. 2016) ("Several federal courts of appeals to have considered this issue in the wake of Wachovia Bank have held that a national bank is a citizen only of the state listed in its articles of association as its main office. . . . We agree with our sister circuits . . . ." (collecting cases)); see also Halifax Corp. v. Wachovia Bank, 192 F. App'x 196, 196-97 (4th Cir. 2006) ("In Schmidt, we held that national banks are 'located' under 28 U.S.C. § 1348 (2000), in every state in which they operate a branch office. . . . While this case was pending on direct review, the Supreme Court reversed this court's judgment in Schmidt, resolving a circuit split and holding that for the purposes of diversity jurisdiction, a bank is 'located' in the state designated in its articles of association as its main office under § 1348.").

    7 This case satisfies the amount-in-controversy requirements for diversity jurisdiction. (See Docket Entry 1 at 6.)

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

In evaluating a summary judgment motion, the Court can consider any "material[] in the record," Fed. R. Civ. P. 56(c)(3), including any affidavits, Fed. R. Civ. P. 56(c)(1)(A). Affidavits

used to support or oppose summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[8]

"In resolving a motion to strike [an allegedly noncompliant affidavit], the Court should use 'a scalpel, not a butcher knife' to strike portions of an affidavit that do not satisfy the requirements of Rule 56([c])." Gardner v. Group Health Plan, No. 5:09-cv-152, 2011 WL 1321403, at *3 (E.D.N.C. Apr. 4, 2011) (quoting Upshaw v. Ford Motor Co., 576 F.3d 576, 593 (6th Cir. 2009)). Furthermore, "the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party and doubts regarding admissibility are resolved in favor of the party opposing summary judgment." Owle v. Solomon, No. 5:16cv25, 2017 WL 2262419, at *3 (W.D.N.C. May 23, 2017) (internal quotation marks omitted); see also Salami v. North Carolina Agric. & Tech. State Univ., 394 F. Supp. 2d 696, 706 (M.D.N.C. 2005) ("[T]he Court will evaluate [the] motions to strike while considering that the papers of a party opposing summary

---

8 As such, "[t]here is no need to make a separate motion to strike." Fed. R. Civ. P. 56 advisory committee's notes, 2010 Amendment Subdivision (c).

judgment are usually held to a less exacting standard than those of the moving party." (internal quotation marks omitted)), aff'd, 191 F. App'x 193 (4th Cir. 2006). Finally, the Court may disregard noncompliant portions of an affidavit "without formally entering an order striking them." Kirkman v. Tison, No. 1:09cv886, 2012 WL 4891624, at *7 (M.D.N.C. Oct. 15, 2012); see also Salami, 394 F. Supp. 2d at 706 ("Therefore, although the Court will not address each specific statement [the d]efendant objects to, to the extent that this Court conclusively finds that any statement is not based on an affiant's first-hand knowledge, the Court will disregard that statement in making the summary judgment determination.").

## III.  Deficiency Analysis

As an initial matter, no dispute exists regarding either the validity or the breach of the Note and Guarantees, as

> Defendants concede that the Plaintiff has established the existence of binding contracts in the form of the promissory [N]ote and personal [G]uarantees, that such contracts were breached as a result of the Defendants' failure to pay the indebtedness when due, and that the Plaintiff received less than the full amount of its indebtedness at the foreclosure sale in which Plaintiff obtained ownership of the [Motel] Property.

(Docket Entry 20 at 7-8.)  Nevertheless, relying on North Carolina's anti-deficiency statute, N.C. Gen. Stat. § 45-21.36, Defendants maintain that summary judgment remains improper because

"there is a genuine factual dispute with respect to the value of the collateral at the time of the foreclosure sale." (Id. at 8.)[9]

## A.  Anti-deficiency Statute

A "depression era law[] designed to protect debtors," High Point Bank & Tr. Co. v. Highmark Properties, LLC, 368 N.C. 301, 305, 776 S.E.2d 838, 842 (2015), the anti-deficiency statute provides a defense to a defendant in a deficiency action brought by a mortgagor who obtains the defendant's property in a foreclosure sale, see N.C. Gen. Stat. § 45-21.36.[10]  More specifically, this

_____

    9  As a federal court sitting in diversity, the Court applies North Carolina's substantive law to the parties' dispute, including its choice-of-law provisions.  See TD Bank, N.A. v. Shree Dutt Sai, LLC, No. 1:14cv852, 2015 WL 7302259, at *2 (M.D.N.C. Nov. 18, 2015).  Because Defendants executed the Note and Guarantees in North Carolina (see Docket Entry 1-3 at 1, 6 (bearing Guarantors' signatures and date of December 12, 2008); Docket Entry 1-4 at 5-6, 11-12, 17-18 (indicating Guarantors signed the Guarantees in North Carolina on December 12, 2008)) and Plaintiff holds the Note (see Docket Entry 1, ¶ 21; see also Docket Entry 1-3 at 4; Docket Entry 1-4 at 2, 8, 14), North Carolina law governs the parties' dispute. See TD Bank, 2015 WL 7302259, at *2-3 & n.2.

    10  In relevant part, the anti-deficiency statute provides:

        When any sale of real estate has been made by a mortgagee, trustee, or other person authorized to make the same, at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title . . . and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation whose property has been so purchased, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and offset . . . that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale

12

statute "provides the method of calculating th[e] amount [of the 'indebtedness']" owed the plaintiff.  High Point Bank, 368 N.C. at 305, 776 S.E.2d at 841.  As the North Carolina Supreme Court explained, under this statute,

> when the creditor has elected to become the purchaser of the property conveyed by the mortgage or deed of trust at a sale made under a power of sale contained in the mortgage or deed of trust, and thereafter, pursuant to such sale and purchase, acquires title to the property, he shall not recover judgment against his debtor for any deficiency, after the application of the amount of his bid as a payment on the debt, without first accounting to his debtor for the fair value of the property at the time and place of the sale, and that such value shall be determined by the court.  In such case, the amount bid by the creditor at the sale, and applied by him as a payment on the debt, is not conclusive as to the value of the property.

Richmond Mortg. & Loan Corp. v. Wachovia Bank & Tr. Co., 210 N.C. 29, 185 S.E. 482, 485 (1936), aff'd, 300 U.S. 124 (U.S. 1937).[11] In actions implicating this statute, the fair market value of the relevant property at the time of the foreclosure sale constitutes a "material fact."  Wachovia Realty Invs. v. Housing, Inc., 292 N.C. 93, 112, 232 S.E.2d 667, 679 (1977).

---

> or that the amount bid was substantially less than its true value, and, upon such showing, to defeat or offset any deficiency judgment against him[.]

N.C. Gen. Stat. § 45-21.36.

11  The anti-deficiency statute protects guarantors as well as principal debtors.  See High Point Bank, 368 N.C. at 307, 776 S.E.2d at 843 ("[The] guarantors had the right to have the court determine the outstanding indebtedness by application of the fair market value of the collateral at the time of sale.").

**B.  The Parties' Contentions**

For purposes of the Summary Judgment Motion, Plaintiff maintains that the fair market value of the Motel Property constituted $320,000 or less on May 9, 2016, the date the foreclosure sale became final.  (See Docket Entry 17, ¶¶ 28, 39, 40; Docket Entry 19 at 4.)  Plaintiff bases the $320,000 amount on an appraisal it obtained of the Motel Property in October 2015, which "determined that the [Motel P]roperty had an 'as-is' fee simple market value of $320,000" (Docket Entry 17, ¶ 28).  (See id., ¶ 40; see also Docket Entry 17-4 (the "Appraisal") at 3.) According to the Appraisal, the "highest and best use of the [Motel P]roperty  is to continue hotel operations on an interim basis," and "the 'as is' market value of the going concern hotel as of October 15, 2015[,] is . . . $320,000."  (Docket Entry 17-4 at 2-3.)

Defendants dispute this assessment.  (See generally Docket Entry 21.)  Bankim Rana ("Rana"), "the primary person responsible for the day-to-day management and operations of the [Motel] Property" (id., ¶ 1), submitted the Rana Affidavit contesting certain "factual inaccuracies" in the Appraisal (id., ¶ 5; see id., ¶¶ 6, 9-11) and opining on the Motel Property's value (see, e.g., id., ¶¶ 8, 16).  In particular, Rana averred that, solely as an operating motel, the Motel Property held a value of at least $700,000.  (Id., ¶ 8.)  Further, according to Rana, "the value of

14

[the] underlying land was greater than the value . . . based upon an operating motel." (Id.) Specifically, "[i]t is [his] opinion that the value of the [Motel] Property on the date of the foreclosure sale was approximately $900,000." (Id., ¶ 16.) The Rana Affidavit identifies four factors underlying this opinion: (i) the Motel Property's $995,600 tax value "at the time of the foreclosure[;]" (ii) its listing "in the months prior to the foreclosure" for sale at $999,000 based on a determination by "an experienced commercial real estate brokerage firm[;]" (iii) its purchase for $1,050,000 in 2008 and the absence of "substantial changes to the condition of the [Motel P]roperty during the time that [LLC Defendant] owned it[;]" and (iv) "comparable sales," which "support a conclusion that the value of the underlying 4.2 acres of land was worth in excess of $900,000." (Id.)

Plaintiff moves to strike the Rana Affidavit on the grounds that it "contain[s] inadmissible lay witness opinions and hearsay." (Docket Entry 22 at 1.) More particularly, Plaintiff asserts that Rana cannot critique the Appraisal or testify regarding the value of the Motel Property as an operating motel because he does not qualify as an expert witness. (See Docket Entry 23 at 7-10.) Plaintiff further asserts that Rana's testimony regarding the Motel Property's underlying value does not constitute "substantial competent evidence sufficient to defeat summary judgment" (id. at 2), because it relies on allegedly inadmissible facts. (See id. at

7.)  Defendants, in turn, defend Rana's testimony as admissible "lay opinion testimony of value" regarding the Motel Property. (Docket Entry 24 at 6.)

### C.  Expert Witness Challenges

As an initial matter, Plaintiff contends that "Rana is not competent to critique [the A]ppraisal because he is not qualified as a real estate expert," as "[t]he sole qualification in the [Rana] Affidavit is [Rana's] alleged 'experience in the motel industry.'" (Docket Entry 23 at 9.)  Plaintiff further challenges Rana's assertion that the Motel Property "should have been valued 'based upon a multiple of 3.5 times gross revenue,'" on the grounds that "Rana has not been qualified as an expert and he offers no corroboration for this formula."  (Id. (citing Docket Entry 21, ¶¶ 3-8).)  For their part, Defendants contend that Rana's testimony qualifies as admissible lay witness opinion testimony rather than impermissible expert witness testimony.  (See generally Docket Entry 24.)

Federal Rule of Evidence 702 ("Rule 702") governs testimony by "expert" witnesses, permitting opinion testimony based on such witnesses' "scientific, technical, or other specialized knowledge" in certain specified circumstances.  Conversely, Federal Rule of Evidence 701 ("Rule 701") governs opinion testimony by lay witnesses, permitting such testimony if it "is 'rationally based on the witness's perception' and helpful to determining a fact in

issue, so long as it is not based on the same 'scientific, technical, or other specialized knowledge' covered by Rule 702." Lord & Taylor, LLC v. White Flint, L.P., 849 F.3d 567, 575 (4th Cir. 2017), as amended (Mar. 7, 2017) (quoting Fed. R. Evid. 701). "Because Rule 701 does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*, the line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 is a fine one." United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006) (citation and internal quotation marks omitted; emphasis in original). Nevertheless, "the key to Rule 701 lay opinion testimony is that it must arise from the personal knowledge or firsthand perception of the witness." Lord & Taylor, 849 F.3d at 575.

Here, Plaintiff challenges "Defendants' cherry-picked critique of [the A]ppraisal" (Docket Entry 23 at 7) on the grounds that Rana "is not qualified as a real estate expert" (id. at 9). However, Rana's critique of "factual inaccuracies" (Docket Entry 21, ¶ 5) in the Appraisal involves information within Rana's "personal knowledge or firsthand perception," Lord & Taylor, 849 F.3d at 575, rather than the "scientific, technical, or other specialized knowledge" Rule 702 contemplates. To begin with, Rana disputes aspects of the Appraisal's contention "that the motel was in poor condition, indicating that the [Motel P]roperty had deteriorated since it was acquired, many rooms were not habitable or unusable

[sic], and the pool was filed with debris." (Docket Entry 21, ¶ 9.) First, according to Rana, "the condition of the [Motel P]roperty was similar to its condition when it was acquired, and had not deteriorated significantly from its condition at the time of its acquisition." (Id.) In particular, Rana asserts that the pool's condition remained unchanged during LLC Defendant's ownership, with "construction debris in the pool when [LLC Defendant] acquired it." (Id., ¶ 11.) Rana also avers that the motel limited available rooms to 50 "to limit local taxes associated with the operation of a motel," not, "as suggested by the [A]ppraisal, [because] only 50 rooms were habitable or usable." (Id., ¶ 10.) These assertions arise from Rana's firsthand observation of the Motel Property, rendering them admissible under Rule 701.

In addition, Rana reports that the Appraisal understates LLC Defendant's 2014 gross income (see id., ¶ 6), as evidenced by LLC Defendant's 2014 tax return (see Docket Entry 20-1 at 20). Finally, Rana asserts (i) that the Appraisal's projection regarding the Motel Property's future gross income "is far too low" and (ii) that a figure of at least $200,000 (rather than the Appraisal's projected $166,988) represents a reasonable expected annual gross income. (Docket Entry 21, ¶ 7.) Given his role as "the primary person responsible for the day-to-day management and operations of the [Motel] Property" (id., ¶ 1), Rana's opinion

18

testimony regarding the Motel Property's 2014 income and future earnings qualifies as lay rather than expert. See Fed. R. Evid. 701 advisory committee's notes, 2000 Amendments ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted . . . because of the particularized knowledge that the witness has by virtue of his or her position in the business." (citation omitted)); see also Lord & Taylor, 849 F.3d at 575-76 (explaining that the United States Court of Appeals for the Fourth Circuit has "permit[ted] business employees . . . to opine on accounting projections under Rule 701, so long as their opinions are based on their first-hand experience on the job," and upholding admission of employee's testimony regarding projected construction costs as consistent "with our precedent [and] also with the Advisory Committee's Note to Rule 701").

Plaintiff also challenges Rana's income-based valuation of the Motel Property. In relevant part, the Rana Affidavit states that "[t]he purchase price [of the Motel Property in 2008] was determined based upon a multiplier of 3.5 times gross revenue." (Docket Entry 21, ¶ 3.) Rana further states that, "[a]t the time the [Motel] Property was purchased, projected gross revenue was $300,000, and [LLC Defendant] valued the [Motel P]roperty at

$1,050,000 based upon a multiple of 3.5 times gross revenue."
(Id.)  Finally, Rana asserts that, "[u]sing a multiplier of 3.5,
which is the same multiplier used at the time [LLC Defendant]
acquired the [Motel P]roperty, yields an estimated value of
$794,592.75 if the historical average is used for the gross revenue
figure" or "a value of $700,000" if using his $200,000 minimum
gross revenue projection.  (Id., ¶ 8.)

In response to these averments, Plaintiff contends that Rana
(i) "offers no corroboration for th[e 3.5 times gross revenue]
formula," (ii) "provides no analysis of factors . . . which might
impact his formula," and (iii) "provides no gross revenue figures
for 2015 and 2016 from which the Court could apply this formula."
(Docket Entry 23 at 9.)  In Plaintiff's view, "Rana is attempting
to provide an expert opinion based on the uncorroborated formula[,
b]ut this vague formula should not be considered by the Court."
(Id.)  These objections do not affect the admissibility of this
testimony.

Based on his firsthand experience with the Motel Property and
its acquisition, Rana can testify regarding an income-based
valuation of the Motel Property.  See, e.g., Sharma v. USA Int'l,
LLC, 851 F.3d 308, 315 (4th Cir. 2017) (reversing summary judgment
award, concluding that "the plaintiffs have introduced sufficient
evidence of their damages to create a material dispute of fact"
where their interrogatory answers and deposition testimony

calculated the restaurants' value "using the widely accepted income-based approach with a capitalization multiplier that [a defendant] purportedly stated was the industry standard and that the parties allegedly used to agree on the [original] purchase price"). Moreover, rather than constituting a "vague" formula, Rana's valuation approach reflects the "capitalization rate method" of valuing income-producing property, under which one multiples the property's stabilized income "by a capitalization rate" to determine its value. Id. at 314 (internal quotation marks omitted). As such, although Plaintiff remains free to challenge the correctness of Rana's 3.5 capitalization ratio (and/or income figures), its objections do not render such testimony inadmissible. Id. at 313-14.

In sum, the disputed Appraisal critiques and income-valuation testimony qualify as admissible under Rule 701. The Court will therefore deny Plaintiff's request to strike this testimony.[12]

---

12  In its "Reply in Support of Motion to Strike," Plaintiff asserts for the first time that "the Court must strike all references in the Rana Affidavit to the 'gross revenue multiplier commonly used in the industry' that Rana relies on to compute his value opinion" (Docket Entry 25 at 3) on the grounds that Rana cannot testify regarding "the real estate industry's practice for valuing real property" (id. at 5). Parties cannot advance new arguments for the first time in a reply brief. See, e.g., United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider argument raised for the first time in reply brief and observing that "this argument comes far too late in the day"); Thompkins v. Key Health Med. Sols., Inc., No. 1:12cv613, 2015 WL 1292228, at *7 (M.D.N.C. Mar. 23, 2015) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." (internal

## D. "Substantial Competent Evidence" Objections

Relying on <u>United Community Bank (Georgia) v. Wolfe</u>, 369 N.C. 555, 799 S.E.2d 269 (2017), Plaintiff next asserts that "[t]he Rana Affidavit does not contain substantial competent evidence sufficient to defeat summary judgment." (Docket Entry 23 at 2.) More specifically, Plaintiff contests the admissibility of three matters Rana relied upon in support of his opinion that the Motel Property's value "on the date of the foreclosure sale was approximately $900,000" (Docket Entry 21, ¶ 16). (<u>See</u> Docket Entry 23 at 2-7 (challenging as inadmissible purchase price, tax value, and listing at realtor's recommended price).) Stripped of such support, Plaintiff maintains, Rana's opinion evidence fails to raise a genuine issue regarding the Motel Property's value, such that the Court should grant summary judgment. (<u>See</u> Docket Entry 25 at 3.) In turn, Defendants maintain that, at a minimum, the three matters at issue provide a proper basis for Rana's opinion

---

quotation marks omitted)), <u>report and recommendation adopted</u>, No. 1:12cv613, 2015 WL 3902340 (M.D.N.C. June 24, 2015). Even if considered, however, this argument would not compel an award of summary judgment to Plaintiff. At a minimum, Rana can permissibly testify to his own experience in valuing motels, including the valuation of the Motel Property using a 3.5 gross income multiplier in 2008. <u>See</u> <u>Sharma</u>, 851 F.3d at 313-15; <u>see also</u> <u>Trademark Props. Inc. v. A & E Television Networks</u>, 422 F. App'x 199, 218 (4th Cir. 2011) (explaining that the "[d]efendant was certainly entitled to present testimony regarding its own standard practices and each [non-expert] witness was allowed to testify that based upon their experience and knowledge of historical facts no one had ever made a fifty-fifty revenue sharing deal with [the d]efendant").

regarding the Motel Property's value.  (<u>See generally</u> Docket Entry 24.)

Under well-established North Carolina law,

> [u]nless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner.  He is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to have a reasonably good idea of what it is worth.

<u>North Carolina State Highway Comm'n v. Helderman</u>, 285 N.C. 645, 652, 207 S.E.2d 720, 725 (1974) (internal quotation marks omitted).[13]  To defeat summary judgment in a deficiency action, however, a property owner must do more than "[s]imply restat[e] the statutory language [of the anti-deficiency statute] in affidavit form."  <u>Wolfe</u>, 369 N.C. at 560, 799 S.E.2d at 273; <u>see also</u> <u>id.</u> at 559-60, 799 S.E.2d at 272 ("In opposing summary judgment here, [the] defendants relied on their status as the property owners and

_____

13   Indeed, even non-owners may testify to the value of property with which they possess sufficient familiarity.  <u>See, e.g.</u>, <u>Craven Cty. v. Hall</u>, 87 N.C. App. 256, 261, 360 S.E.2d 479, 481 (1987) (holding that landowner's "son should have been permitted to give his opinion as to the value of the property"); <u>see also</u> <u>Harrelson v. Gooden</u>, 229 N.C. 654, 656-57, 50 S.E.2d 901, 903 (1948) ("Appellant excepted to the ruling of the court permitting a witness to give in evidence his opinion of the value respectively of the 14½ acres of land and of the 85 acres.  However, the witness had testified [that] he was living on the Gooden land in 1944, and had lived there four years[, as well as] that he knew both tracts of land and had an opinion satisfactory to himself as to their value at the time the deed to Alden Gooden was made.  This evidence was not incompetent.  Its probative value, subject to being tested on cross-examination, was for the jury.").

23

their joint affidavit 'made on [their] personal knowledge,' stating that they 'verily believe[ ] that the . . . property sold . . . was at the time of [the foreclosure] sale fairly worth the amount of the debt it secured.'  [The d]efendants' conclusory statement without any supporting facts is insufficient to create a genuine issue of material fact." (all but first, second, and final alterations in original)).[14]  In other words, as with any witness, a property owner must offer "more than a conclusory statement" regarding the property's value to create the necessary genuine issue of material fact to stave off summary judgment.  <u>Id.</u> at 560, 799 S.E.2d at 272; <u>see also</u> <u>id.</u>, 799 S.E.2d at 273 ("In sum, [the] defendants failed to present substantial competent evidence to create a genuine issue of material fact regarding the 'true value' of the foreclosed property.  Under [North Carolina Rule of Civil Procedure] 56, merely reciting the statutory language or asserting an unsubstantiated opinion regarding the foreclosed property's value is insufficient.").

Unlike the affidavit at issue in <u>Wolfe</u>, the Rana Affidavit articulates "specific facts" and "objective criteria," <u>id.</u>, 799 S.E.2d at 272 (internal quotation marks omitted), upon which Rana

---

14  In <u>Wolfe</u>, the property owners merely recited the statutory language without specifying a monetary value for the property or any facts upon which they based their opinion of the property's value.  <u>See</u> <u>id.</u> at 559-60, 799 S.E.2d at 272-73; <u>see also</u> <u>United Cmty. Bank (Ga.) v. Wolfe</u>, 242 N.C. App. 245, 248-50, 775 S.E.2d 677, 680-81 (2015), <u>review allowed</u>, 369 N.C. 45, 794 S.E.2d 315 (2016), <u>and</u> <u>rev'd</u>, 369 N.C. 555, 799 S.E.2d 269 (2017).

bases his opinion of the Motel Property's value. (See generally Docket Entry 21.) As relevant here, Plaintiff contests the admissibility of three such bases, as discussed below. Significantly, however, Plaintiff does not challenge the admissibility of Rana's testimony regarding "comparable sales" (id., ¶¶ 15, 16; see also Docket Entry 20 at 5-6 (analyzing "comparable sales" identified in Appraisal)). (See Docket Entries 23, 25.)

> It is the rule in [North Carolina] that the price paid at voluntary sales of land, similar in nature, location, and condition to the condemnee's land, is admissible as independent evidence of the value of the land taken if the prior sale was not too remote in time. Whether two properties are sufficiently similar to admit evidence of the purchase price of one as a guide to the value of the other is a question to be determined by the trial judge in the exercise of a sound discretion guided by law.

State v. Johnson, 282 N.C. 1, 21, 191 S.E.2d 641, 655 (1972). Given the fact-dependent nature of this analysis and Plaintiff's failure to challenge Rana's testimony regarding comparable sales, the Court concludes that, for summary judgment purposes, Rana's testimony regarding "comparable sales" (see Docket Entry 21, ¶¶ 15, 16) constitutes admissible independent evidence regarding the Motel Property's value. It also qualifies as a permissible basis for Rana's opinion testimony regarding the Motel Property's value.

Given that consideration and for the reasons that follow, Plaintiff's challenges to the three additional matters identified in support of Rana's valuation testimony do not warrant summary

judgment against Defendants.   Plaintiff first contests the
admissibility of Rana's testimony regarding the Motel Property's
purchase price on the grounds that the Rana Affidavit (i) "provides
no evidence to determine if the sale was voluntary or not,"
(ii) "[s]ince Rana attaches no documents to establish the terms of
the original purchase, allegations about the purchase are not
corroborated and inadmissible" (relying on "Orsi v. Kirkwood, 999
F.2d 86, 92 (4th Cir. 1993)"), and (iii) "the purported sale in
2008 is not 'within a reasonable time' of the foreclosure sale."
(Docket Entry 23 at 3.)

        As an initial matter, Plaintiff has identified no evidence in
the record suggesting that LLC Defendant purchased the Motel
Property under anything but voluntary terms.   In the absence of
such evidence, the Court declines, at least at the summary judgment
stage, to infer any such circumstance.   Likewise, Plaintiff has not
shown that Rana bore any obligation to support his sworn statement
that Defendants purchased the Motel Property for $1,050,000 in 2008
with documentary evidence.[15]   Furthermore, Plaintiff's Appraisal
(documentary evidence of record) explicitly states that LLC

_____

        15   The case cited by Plaintiff on this front involved a
party's failure to authenticate documentary evidence with a
qualifying affidavit, not a party's failure to provide documentary
evidence in support of an affidavit.   See Orsi, 999 F.2d at 92
("None of the four documents were attached to affidavits, and the
district court had no immediate way of ascertaining whether the
documents were even what they purported to be.").

26

Defendant purchased the Motel Property for $1,050,000 in 2008. (Docket Entry 17-4 at 11, 48.)

Finally (as to the purchase price testimony), "[w]hat is a reasonable time [regarding a prior sale] . . . depend[s] upon the circumstances of each particular case and the character of the property in question." <u>Newsom v. Cothran</u>, 185 N.C. 161, 116 S.E 415, 416 (1923); <u>see also</u> <u>State Highway & Pub. Works Comm'n v. Hartley</u>, 218 N.C. 438, 11 S.E.2d 314, 315 (1940) ("The rule is necessarily one of variableness in the time limits, depending upon the nature of the property, its location and surrounding circumstances, and whether the evidence offered fairly points to its value at the time in question."). For instance, the North Carolina Supreme Court has deemed admissible information regarding a purchase "about 18 years ago" where the landowner "testified that they had owned the property for 18 years, and that the building [in question] was then upon the property." <u>Palmer v. North Carolina State Highway Comm'n</u>, 1925 N.C. 1, 141 S.E. 338, 339 (1928). Here, Rana asserts that the Motel Property remained largely unchanged during its ownership by LLC Defendant. (<u>See</u> Docket Entry 21, ¶¶ 9-11.) Plaintiff disputes that assessment. (<u>See</u> Docket Entry 23 at 4 (emphasizing "that the City of Fayetteville condemned the [Motel P]roperty in 2016," resulting in a "resale price of $75,000.00").) In adjudicating the Summary Judgment Motion, the Court must resolve all factual conflicts in Defendants' favor. <u>See</u> <u>Miller</u>, 913 F.2d

at 1087. Accordingly, for present purposes, the Court will overrule Plaintiff's objection to Rana's reliance on the purchase price as support for his opinion testimony about value.

Plaintiff next contends that the Motel Property's 2016 tax valuation of $995,600 does not qualify as "competent to establish the market value of real property." (Docket Entry 23 at 4-5.) Defendants respond that "the tax value is not being offered as independent evidence of value. Instead, the tax value is one fact among many that forms the basis for Mr. Rana's opinion of value. The purpose of this fact is to create the necessary underlying support for his ability to offer lay opinion testimony" of the Motel Property's value, "not to serve as evidence of value in and of itself." (Docket Entry 24 at 5.) In North Carolina,

> [a]ll property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283. Accordingly, courts in North Carolina frequently admit tax valuations as evidence of the fair market value of property. See, e.g., Queen v. Queen, No. COA07-1207, 189 N.C. App. 531 (table), 659 S.E.2d 490 (table), 2008 WL 850633 (Apr.

1, 2008); <u>First Citizens Bank & Tr. Co. v. Cannon</u>, 138 N.C. App. 153, 155-56, 530 S.E.2d 581, 583 (2000).

Nevertheless, the North Carolina Supreme Court has held that tax valuations do <u>not</u> constitute competent evidence of the fair market value of property. <u>See</u>, <u>e.g.</u>, <u>Star Mfg. Co. v. Atlantic Coast Line R. Co.</u>, 222 N.C. 330, 332-33, 23 S.E.2d 32, 36 (1942).[16] However, the North Carolina Supreme Court has also held that, although tax records cannot independently establish the value of property, such records remain admissible for proving the "*fact* that the [relevant] land had been assessed at [a certain amount]." <u>Cardwell v. Mebane</u>, 68 N.C. 485, 487 (1873) (emphasis in original). The North Carolina Supreme Court has thus permitted introduction of tax records in a fraud case where the defendants sought to prove "probable cause on their part to believe, that the land was of that value as represented . . ., and is explanatory of the circumstance that they paid that price." <u>Id.</u> at 487; <u>see also</u> <u>id.</u> at 488 ("The mere fact that this land was entered on the tax lists as of the value of $5,000 is evidence against everybody of that fact, and we are of opinion that in repelling a charge of fraud resting among

---

16   The North Carolina Supreme Court has given two primary rationales for this approach.  First, because officials establish the tax value of real property without an owner's input regarding valuation, evidence of the tax value cannot impeach an owner's testimony regarding the property's worth.  <u>See</u> <u>id.</u>, 23 S.E.2d at 36.  Second, in the ordinary case, litigants could not subject the tax-assessor's valuation to cross-examination.  <u>See</u>, <u>e.g.</u>, <u>Cardwell v. Mebane</u>, 68 N.C. 485, 487 (1873).

other circumstances on the allegation that the pretended price paid exceeded very much the value of the land, the defendants ought to have been allowed to prove this fact, to pass for what it was worth in the estimation of the jury.").

At this juncture, the Court need not decide whether consideration of tax value to the extent permitted by Cardwell would provide a basis for Rana's valuation opinion, as the Rana Affidavit relies on sufficient other indicia of the Motel Property's value to avoid summary judgment, even excluding Rana's reference to tax value.

As a final matter, Plaintiff seeks to strike Rana's testimony regarding the listing of the Motel Property at a price determined by a realtor. In particular, Plaintiff challenges as inadmissible hearsay Rana's assertion that LLC Defendant listed the Motel Property for $999,000 based upon a realtor's recommendation.[17] In response, Defendants contend that "[t]he broker's recommended list

---

17    Plaintiff also maintains that "Defendants provide no evidence they actually listed the property for sale in 2015." (Docket Entry 23 at 5.) However, the Appraisal describes the Motel Property as "[c]urrently listed with Grant Murray RE LLC for $999,000." (Docket Entry 17-4 at 11.) Plaintiff further argues that North Carolina law precludes a realtor from offering "[a] broker price opinion or comparative market analysis that estimates the value of or worth . . . [of] real estate . . . in lieu of an appraisal when an appraisal is required by federal or State law." (Docket Entry 23 at 6-7 (emphasis omitted) (quoting N.C. Gen. Stat. § 93A-83(f)).) By its terms, the cited statute does not apply to a recommendation regarding the Motel Property's appropriate listing price. Also, North Carolina courts frequently accept evidence from realtors regarding appropriate property valuations. See, e.g., Cannon, 138 N.C. App. at 156, 530 S.E.2d at 583.

price of $999,000 is not offered as evidence of value itself, but is instead offered as evidence of what facts Mr. Rana considered in forming his lay opinion that the property was worth more than $900,000," and, as such, "the broker's recommended listing price is not hearsay since it is not offered for the truth of the matter asserted." (Docket Entry 24 at 6.) As with the tax valuation, the Court need not resolve this issue for summary judgment purposes, as sufficient other grounds exist to permit consideration of Rana's valuation opinion.

## E. Deficiency Amount

In sum, given the standards at the summary judgment stage, the Rana Affidavit contains an adequate foundation for its lay opinion valuation of the Motel Property at $700,000 or higher. Because Plaintiff's evidence values the Motel Property at a maximum of $320,000, a genuine dispute of material fact exists. See Wachovia Realty, 292 N.C. at 112, 232 S.E.2d at 679 ("The fair value, as of the date of the foreclosure sale, of the properties . . . is, therefore, a material fact with reference to the amount, if any, which the plaintiff is entitled to recover from the defendant upon the note in suit."); see also Evans, 80 F.3d at 959 (explaining that a genuine issue of material fact exists if a reasonable jury could find for the nonmoving party). This dispute regarding the Motel Property's value precludes awarding summary judgment to Plaintiff on its deficiency claim.

## IV. Attorney's Fees

Pursuant to North Carolina General Statute Section 6-21.2, Plaintiff independently seeks an award of attorney's fees equal to 15 percent of the outstanding balance when it instituted this action. (See Docket Entry 19 at 9-12; Docket Entry 23 at 10.)  In relevant part, the cited statute provides:

> Obligations to pay attorneys' fees upon any note . . . or other evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
>
> . . . .
>
> (2) If such note . . . or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note . . . or other evidence of indebtedness.
>
> (3) As to notes and other writing(s) evidencing an indebtedness arising out of a loan of money to the debtor, the "outstanding balance" shall mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.
>
> . . . .
>
> (5) The holder of . . . a note and chattel mortgage or other security agreement . . ., or his attorney at law, shall, after maturity of the obligation by default or otherwise, notify the maker, debtor, account debtor, endorser or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation has five days from the mailing of such notice to pay the

> "outstanding balance" without the attorneys' fees.  If
> such party shall pay the "outstanding balance" in full
> before the expiration of such time, then the obligation
> to pay the attorneys' fees shall be void, and no court
> shall enforce such provisions.

N.C. Gen. Stat. § 6-21.2; <u>see also</u> <u>Lee Cycle Ctr., Inc. v. Wilson</u>

<u>Cycle Ctr., Inc.</u>, 143 N.C. App. 1, 12, 545 S.E.2d 745, 752 (2001)

("[S]ection 6-21.2 allows (1) the party owed the debt (2) to

recover attorney's fees (3) after the debt has matured (4) provided

it is written in the note . . . or other evidence of

indebtedness.").  A creditor can recover attorney's fees pursuant

to this statute even if the anti-deficiency statute precludes

recovery of the note's outstanding balance.  <u>See</u> <u>Trull v. Central</u>

<u>Carolina Bank & Tr.</u>, 124 N.C. App. 486, 491-92, 478 S.E.2d 39,

42-43 (1996) (rejecting challenge to attorney's fee award where the

creditor "was unsuccessful in its deficiency action against" a

debtor who used the anti-deficiency statute's "reasonable value

defense"), <u>aff'd in part</u>, <u>review dismissed in part</u>, 347 N.C. 262,

490 S.E.2d 238 (1997).

Here, the Note obliges LLC Defendant to pay "reasonable

attorney's fees and costs" that Plaintiff incurs "to collect

amounts due under this Note."  (Docket Entry 1-3 at 3.)[18]  Each

Guarantee similarly obliges the Guarantor "to pay all expenses

---

18  The Note also authorizes Plaintiff to incur expenses to
"preserve or dispose of the [Motel Property]," including "property
taxes," and to either "demand immediate repayment from [LLC
Defendant] or add the expenses to the principal balance" on the
Note.  (<u>Id.</u>)

[Plaintiff] incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." (Docket Entry 1-4 at 3, 9, 15.) In accordance with Section 6-21.2(5), Plaintiff's Demand Letters notified Defendants of (i) LLC Defendant's default under the Note; (ii) the balance due on the Note; (iii) Plaintiff's intention to recover attorney's fees equal to 15 percent of the balance due at commencement of any deficiency suit; and (iv) Defendants' ability to avoid such attorney's fees by paying the outstanding balance within five days. (Docket Entry 17-2 at 1, 3.) Plaintiff has therefore established its entitlement to attorney's fees under this statute.

Because the Note and Guarantees do not specify the amount of attorney's fees Plaintiff can collect, Section 6-21.2(2) authorizes attorney's fees of 15 percent of the outstanding balance when Plaintiff instituted this suit. According to an affidavit Plaintiff provided from an employee knowledgeable about the situation, the outstanding indebtedness on the Note — crediting the Appraisal's $320,000 valuation, and including foreclosure costs, interest, late fees, and property taxes — totaled $489,957.14 when Plaintiff instituted this action. (See Docket Entry 17, ¶¶ 38-43; see also Docket Entry 17-9 at 1-2; Docket Entry 1-6 at 1.)[19]

_____

19   The North Carolina courts have held that a foreclosure "bid that was twenty percent less than the appraised value of the property was 'substantially less' than the property's true value" under the anti-deficiency statute. Blue Ridge Sav. Bank, Inc. v. Mitchell, 218 N.C. App. 410, 413, 721 S.E.2d 322, 325, aff'd, 366

Fifteen percent of $489,957.14 equals $73,493.57. Defendants bear joint and several liability for this $73,493.57 attorney's fee award. See TD Bank, N.A. v. Shree Dutt Sai, LLC, No. 1:14cv852, 2015 WL 7302259, at *6 (M.D.N.C. Nov. 18, 2015) (citing RC Assocs. v. Regency Ventures, Inc., 111 N.C. App. 367, 374, 432 S.E.2d 394, 398 (1993)).

### CONCLUSION

Plaintiff's challenges to the Rana Affidavit lack merit and/or do not affect the admissibility, at least for summary judgment purposes, of the lay opinion testimony as to the value of the Motel Property. In light of that testimony, a material factual dispute exists, precluding summary judgment on Plaintiff's deficiency claim. Nevertheless, Plaintiff has established, as a matter of law, Defendants' liability for attorney's fees under Section 6-21.2.

**IT IS THEREFORE ORDERED** that the Motion to Strike (Docket Entry 22) is **DENIED**.

---

N.C. 331, 734 S.E.2d 572 (2012); see also In re Greco, Civ. Action No. 12-51497, 2014 WL 1168507, at *4 & n.2 (Bankr. M.D.N.C. Mar. 21, 2014) (explaining that, as a matter of North Carolina law, a bid of 20 percent less than the property's appraised value "may be deemed to have been substantially less than the true value of the subject property"). Plaintiff's $215,000 foreclosure bid equals only 67 percent of the Appraisal's $320,000 valuation, a difference of 33 percent. Under the circumstances, the Court agrees with Plaintiff that a credit of $320,000, rather than $215,000, applies to the Note's outstanding balance. (See Docket Entry 17, ¶ 40; see also Docket Entry 19 at 12 ("When [Plaintiff] sued, the debt was $489,957.14.").)

**IT IS FURTHER ORDERED** that the Summary Judgment Motion (Docket Entry 16) is **DENIED** as to the deficiency claim, but **GRANTED** as to the request for attorney's fees.

**IT IS FURTHER ORDERED** that Defendants are jointly and severally liable to Plaintiff on the Note and Guarantees for $73,493.57 in attorney's fees.

This 17th day of January, 2018.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
